### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UHAR & COMPANY, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-1698 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 28 |
| | : | | |
| MOHAN JACOB *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case comes before the court on the plaintiff's motion for summary judgment. The

plaintiff, Uhar & Company, Inc. ("Uhar") is a commercial real estate broker that operates in the

District of Columbia. The plaintiff alleges that the defendants, Mohan Jacob ("Jacob") and

Manna LLC, committed a breach of contract by failing to pay the plaintiff certain commissions

pursuant to a brokerage agreement. The defendants oppose the plaintiff's motion for summary

judgment on three grounds. First, they contend that Manna LLC was not a party to the brokerage

agreement. Second, they argue that the D.C. Statute of Frauds bars the plaintiff's claim. Third,

they maintain that they do not owe the plaintiff any brokerage commissions because the plaintiff

did not actually perform any brokerage services.

Because Jacob entered into the brokerage agreement as Manna LLC's agent, the court

concludes that Manna LLC is a party to the brokerage agreement. Further, because the

defendants signed a written memorandum that memorializes the brokerage agreement's essential

terms, the court concludes that the D.C. Statute of Frauds does not bar the plaintiff's claim. With

respect to these two issues, the court grants in part the plaintiff's motion for summary judgment. Because a genuine dispute of material fact exists with regard to the plaintiff's performance of brokerage services, however, the court denies in part the plaintiff's motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff is a commercial real estate broker that operates in the District of Columbia. *See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 2.  Manna LLC is a Virginia limited liability corporation; Jacob is its sole member.  *See id.*, Ex. 2 at 4.  According to the plaintiff, Manna LLC is an entity through which Jacob operates as a commercial landlord in Washington, D.C. *Id.* at 2.  The defendants own a parcel of commercial real estate located in Southwest D.C.  *Id.*

The plaintiff claims it entered into a brokerage agreement with Jacob and Manna LLC in order to secure a tenant for the property.  *Id.*  Under this agreement, the plaintiff claims, the defendants agreed to pay Uhar 3% of the property's monthly rent in exchange for the plaintiff's successful effort to procure a tenant.  *Id.*

Although the brokerage agreement does not exist in written form, its essential terms were memorialized in a lease agreement that was signed by Jacob and the property's tenant, Specialized Education of D.C., Inc.  Pl.'s Mot. at 2.  More specifically, Section 25.8 of the lease agreement states:

> (a) <u>Brokerage</u>.  Landlord [Manna LLC] and Tenant warrant to the other that neither of them has had any dealings with any broker or agent in connection with the lease transactions contemplated hereby except Uhar & Company, Inc. ("Landlord's Broker") and The Meyer Group, Ltd. ("Tenant's Broker"), who will be paid by Landlord in accordance with the terms of this Section 25.8. . . .

     (c) <u>Commissions to Landlord's Broker</u>.  Landlord hereby agrees to pay Landlord's Broker 3% of (i) each installment of Base Rent received with respect to the Initial Term (but not the Renewal Term), and (ii) any Termination Payment received in accordance with this Lease.  Landlord shall remit these commission amounts to Landlord's Broker within 30 days of Landlord's receipt of funds, Landlord's obligation being only to pay when paid.

Pl.'s Mot., Ex. 3.

     The plaintiff commenced this action in September 2009, arguing that it is entitled to a brokerage commission pursuant to the brokerage agreement that is memorialized in section 25.8 of the lease agreement.  *See generally* Compl.  Later that month, the defendants filed a motion to dismiss.  *See generally* Defs.' Mot. to Dismiss ("Defs.' Mot.").  In that motion, the defendants alleged that no written contract existed between the parties, and D.C.'s Statute of Frauds barred the plaintiff's claim.  *See id.*  The court rejected both arguments, instead holding that the lease agreement set forth the "essential terms" of the brokerage agreement and satisfied D.C.'s Statute of Frauds.  Mem. Op. (Mar. 3, 2010) at 8-11.

     The plaintiff now moves for summary judgment on its claim.  *See generally* Pl.'s Mot. With this motion now ripe for adjudication, the court turns to the parties' arguments and the relevant legal standards.

## III.  ANALYSIS

### A.  Legal Standard for Summary Judgment

     Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).

### B.  Manna LLC is a Party to the Brokerage Agreement

The plaintiff argues that Jacob entered into the brokerage agreement with the plaintiff as an agent for Jacob's corporate principal, Manna LLC.  Pl.'s Mot. at 1.  Accordingly, the plaintiff

concludes that Manna LLC is legally bound to the terms of the brokerage agreement. *Id.* In contrast, the defendants deny that Jacob ever acted as Manna LLC's agent. Defs.' Opp'n at 3. They instead argue that Jacob was merely a "facilities manager" for Manna LLC who lacked the authority to bind Manna LLC to any legal agreements. *Id*.

"As a legal fiction incapable of autonomous action, a corporation can carry out its affairs only through the acts of its agents." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 7 (D.D.C. 1997), *aff'd sub nom. Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 159 F.3d 636 (D.C. Cir. 1998). A corporation is bound by the acts of its agents so long as they act within the scope of their actual or apparent authority. *See Columbia*, 15 F. Supp. 2d at 7. If an agent who acts with actual or apparent authority enters into a contract on behalf of a principal, that principal is a party to the contract. *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 152 (D.D.C. 2007); *see also* RESTATEMENT (THIRD) OF AGENCY § 6.01.

Accordingly, to determine whether Manna LLC is legally bound to the terms of the brokerage agreement, the court must resolve two questions: (1) whether Jacob was in fact Manna LLC's agent, and if so (2) whether Jacob had the actual or apparent authority to enter into contracts on Manna LLC's behalf. *See* RESTATEMENT (THIRD) OF AGENCY §§ 1.01, 2.01. The court addresses these questions in turn.

Turning to the first question, the court notes that whether an agency relationship exists in a given situation depends on the particular facts of each case. *District of Columbia v. Hampton*, 666 A.2d 30, 38 (D.C. 1995). A corporation generally manifests its assent to be bound by the

acts of individuals in its charter, certificate of incorporation, articles of organization and bylaws.

RESTATEMENT (THIRD) OF AGENCY § 1.03 comment c.

Here, Manna LLC is a Virginia limited liability corporation; Jacob is its sole member. *See* Pl.'s Mot., Ex. 2 at 4. Manna LLC's articles of organization expressly designate Jacob as Manna LLC's "manager." *See* Pl.'s Reply, Ex. 1. Furthermore, under Virginia law, this designation entitles Jacob to act as Manna LLC's agent. *See* VA. CODE §§ 13.1-1021.1(B) (stating that a limited liability company may designate a manager to act as its agent through its articles of incorporation).

Additional proof of Jacob's status as an agent is found in Manna LLC's "operating agreement," which demonstrates how Manna LLC has opted to conduct its affairs. *See* VA. CODE § 13.1-1023 (describing the role of an operating agreement under Virginia law). Manna LLC's operating agreement specifically authorizes Jacob, as its manager, to

> do in the name of, and on behalf of, the Company all things that in its sole judgment, are necessary, proper, or desirable to carry out the purposes of the Company, including, but not limited to, the right, power, and authority . . . to execute any and all agreements, contracts, documents, certifications, and instruments necessary or convenient in connection with the development, management, maintenance, and operation of any properties in which the Company has an interest.

Pl.'s Reply, Ex. 2.

The defendants do not present any salient facts that might show that Jacob lacked the authority to act as Manna LLC's agent. Although the defendants characterize Jacob as a mere "facilities manager," they have failed to put forth any evidence which would transform their contention into a genuine factual dispute that is suitable for trial. As such, the court gives very little weight to the defendant's self-serving characterization of the parties' legal relationship. *See*

RESTATEMENT (THIRD) OF AGENCY § 1.02 ("Whether a relationship is characterized as agency in an agreement between parties or in the context of industry or popular usage is not controlling.").

Because the plaintiff has advanced evidence showing that Manna LLC conferred upon Jacob "full and complete authority" to "act for," "in the name of" and "on behalf of" Manna LLC, and in light of the lack of countervailing evidence offered by the defendant, the court concludes that no reasonable juror could deny that a principal-agent relationship existed between Manna LLC and Jacob. *See Cox Enterprises, Inc. v. News-Journal Corp.*, 2008 WL 5142417, at *6 (M.D. Fla. Dec. 5, 2008). Accordingly, the court grants the plaintiff's motion for summary judgment inasmuch as it argues that Jacob is Manna LLC's agent.

Turning to the second question, the court must determine whether Jacob had the actual or apparent authority to enter into a contract on Manna LLC's behalf. An agent may bind the principal to a contract if the agent entered into a contract while acting within the scope of his or her actual authority. *See Columbia Hosp.*, 15 F. Supp. 2d at 7. The scope of a corporate agent's actual authority is generally defined by the corporation's articles of incorporation and bylaws. *See Cox Enterprises*, 2008 WL 5142417, at *6; *see also* RESTATEMENT (THIRD) OF AGENCY § 1.03 comment a.

As the court has already noted, Manna LLC's operating agreement states that Jacob has the authority to "execute any and all agreements" or "contracts" "in the name of" Manna LLC. *See* Pl.'s Mot., Ex. 3. Jacob therefore acted squarely within the scope of his actual authority when he entered into a brokerage agreement on Manna LLC's behalf. Because Jacob acted within the scope of his actual authority as Manna LLC's agent, Manna LLC is bound as a party to the brokerage agreement. *See Toledano v. O'Connor*, 501 F. Supp. 2d at 152. The court

7

therefore grants the plaintiff's motion for summary judgment inasmuch as it argues that Manna

LLC is a party to the brokerage agreement.


**C. The Lease Agreement Satisfies the Statute of Frauds, Even if the Defendants Claim**
**They Were Unaware of Its Contents When They Signed It**

The defendants argue that the lease agreement between the defendants and Specialized

Education fails to satisfy D.C.'s Statute of Frauds because the defendants were unaware of the

agreement's contents at the moment they signed it.  Defs.' Opp'n at 4.  Specifically, the

defendants claim that the defendants were unaware that the lease agreement contained a

provision relating to the plaintiff's brokerage fees.  *Id.*  The plaintiff counters that the defendants

signed the lease agreement and are legally bound by its terms, whether or not they were ignorant

of the agreement's contents.  Pl.'s Reply at 1-2.

Generally, "one who signs a contract has a duty to read it and is obligated according to its

terms."  *Tauber v. Quan*, 938 A.2d 724, 732 n.29 (D.C. 2007) (citing *Hollywood Credit Clothing*

*Co. v. Gibson*, 188 A.2d 348, 349 (D.C. 1963)); *see also Nickens v. Labor Agency of Metro.*

*Wash.*, 600 A.2d 813, 817 n.2 (D.C. 1991) ("[A]bsent fraud or mistake, one who signs a contract

is bound by a contract which he has an opportunity to read whether he does so or not");

*Interdonato v. Interdonato*, 521 A.2d 1124, 1133 (D.C. 1987) (same).  Similarly, "[a] written

contract is the highest evidence of its terms, and it is the duty of contracting parties to acquaint

themselves with its contents before signing."  *Baltimore & O.R. Co. v. Morgan*, 1910 WL 20828,

at *6 (Ct. App. D.C. May 10, 1910).  Furthermore, D.C.'s Statute of Frauds requires only that a

written memorandum be "*signed* by the party to be charged therewith or a person authorized by him." D.C. CODE § 28-3502 (emphasis added).

Here, the defendants signed the written memorandum, and no more is required to satisfy the D.C. Statute of Frauds. *Id.*; *see also Coffin v. District of Columbia*, 320 A.2d 301, 304 (D.C. 1974) (holding that a work order satisfied the statute of frauds because it was "in written form, it include[d] the terms of the agreement, and it [was] signed . . . by the [defendant's] agent"). If the defendants signed the lease without reviewing its contents, the cost of that error must be borne by the defendants alone. *See Tauber v. Quan*, 938 A.2d at 732. Ruling otherwise would reward those foolhardy individuals who do not read the contents of the agreements they sign. *Baltimore*, 1910 WL 20828, at *6 ("The statement of one signing [a contract], in the full possession of his faculties, that he did not read it, and therefore did not know what he was signing, will not, in law, constitute an excuse."); *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) (noting that "contracts would not be worth the paper on which they were written" if a court allowed a party to withdraw from a contract whenever he or she retroactively claims ignorance of the contract's provisions). In sum, ignorance may be bliss – but it is not a valid legal defense. Accordingly, the court concludes that the D.C. Statute of Frauds does not bar the plaintiff's claim.

### D. A Genuine Dispute of Material Fact Exists Regarding the Extent to which the Plaintiff Engaged in Efforts to Procure a Tenant

The plaintiff argues that it is entitled to certain brokerage commissions because it procured a tenant for the defendants' property. Pl.'s Mot. at 2-3. In contrast, the defendants

argue that the plaintiff did not engage in any meaningful efforts to obtain a tenant, *see* Defs.' Opp'n at 2, but rather that Manna LLC found the tenant through its own efforts, *id.*, Ex. 1 ¶¶ 18-19.

At the heart of the parties' dispute is a disagreement of fact. The defendants aver that Uhar never performed any brokerage services. *See* Defs.' Mot. at 2-3; *id.*, Ex. 1 (Aff. of Mohan Jacob) ¶ 13 ("Uhar did not place a single advertisement on the internet or in a newspaper to attract prospective tenants for Manna's property. Likewise, it did not show the property to any prospective tenants to occupy Manna's property that I am aware of."). In response, the plaintiff argues that the language of the lease agreement is conclusive proof that the plaintiff had successfully engaged in efforts to secure the tenant. *See* Pl.'s Mot., Ex. 3; Pl.'s Reply at 7-8; (noting that the lease states that "the Landlord *must pay* Uhar 3% of its installment of base rent") (emphasis added); *see also* Pl.'s Mot., Ex. 2 ¶¶ 3, 5 (Aff. of John Uhar) (stating that the tenant was secured by the plaintiff's efforts as a broker).

When faced with two competing factual allegations, it is not the court's role at the summary judgment stage to weigh the evidence and determine the truth of the matter. *Anderson*, 477 U.S. at 249. Rather, a factual dispute requires resolution at trial before a finder of fact. *Id.* The court therefore concludes that summary judgment is inappropriate at this juncture, and the court denies in part the plaintiff's motion.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion for summary judgment.  An order consistent with this Memorandum Opinion is issued this 12th day of January, 2012.


RICARDO M. URBINA
United States District Court Judge